IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GREGORY K. BAXTER**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| | | **CIVIL NO. JKB-19-3241** |
| **BURNS & MCDONNELL ENGINEERING COMPANY, INC.**, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiffs Gregory K. Baxter and Kelechi Osigwe sued their former employer, Burns & McDonnell Engineering Company, Inc. ("Burns & McDonnell" or "Defendant") claiming that Defendant unlawfully failed to pay Plaintiffs and a class of similarly situated employees overtime wages. Now pending before the Court is Plaintiffs' Motion to Compel Discovery (ECF No. 53).[1] The motion is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will grant the motion in part and deny it in part.

### I.   *Background*

The procedural history and facts are set forth in the Court's prior Memorandum Opinion and Orders (*see* ECF Nos. 47, 57) and are incorporated by reference and repeated as necessary to provide context and to resolve the pending motion. In short, Plaintiffs are former employees of Defendant, and they claim that Defendant unlawfully withheld overtime wages from Plaintiffs and a class of similarly situated employees in violation of the Fair Labor Standards Act, 29 U.S.C. §§

---

[1] Also pending is Plaintiffs' motion for conditional certification and court-authorized notice. (ECF No. 35.) That motion will be addressed in a future memorandum and order.

201 *et seq.* ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* ("MWHL"), and N.Y. Lab. Law §§ 650 *et seq.* ("NYLL"). (Compl., ECF No. 1.)

The parties' submissions make it clear that their central disagreement is whether Defendant compensated Plaintiffs on a "salary basis" under 29 C.F.R. § 541.602. (*See* Mot. Compel Mem. Supp. at 1, ECF No. 53-1; Opp'n Mot. Compel at 2, ECF No. 59.) If Plaintiffs were paid on a salary basis, then Defendant was likely correct in considering them exempt from the FLSA time-and-a-half overtime pay requirement. If Plaintiffs were not paid on a salary basis, then Defendant likely violated FLSA by failing to pay them time-and-a-half for overtime. The parties agree that the Court's determination on the "salary basis" question will likely turn on its findings regarding: (1) whether Plaintiffs' compensation was subject to improper deductions under 29 C.F.R. § 541.603; (2) whether the 29 C.F.R. § 541.604(b) reasonable relationship test applies to Plaintiffs; and (3) if so, whether each Plaintiff's compensation meets that test.

In accordance with the Court's preferred practice in FLSA matters, the Court entered a scheduling order wherein the parties would be granted the opportunity to explore the merits of the individual Plaintiffs' claims and seek summary judgment on those claims before being required to engage in class discovery. (ECF Nos. 23, 47.) On October 2, 2020, four days before the October 6 close of the initial discovery period, Plaintiffs filed the pending motion to compel. (ECF No. 53.) The dispute centers around Defendant's responses to four Requests for Production—Request Nos. 1, 8, 26, and 42, which seek:

> 1: All time sheets, pay stubs, W-2s, and/ or PAYROLL RECORDS for PLAINTIFFS and the PUTATIVE CLASS MEMBERS during the LIMITATIONS PERIOD.
>
> 8: All DOCUMENTS DEFENDANT reviewed in determining how to pay PLAINTIFFS and the PUTATIVE CLASS MEMBERS.

26: ALL DOCUMENTS, if any, reflecting any PUTATIVE CLASS MEMBERS (including PLAINTIFFS) were compensated "STRAIGHT TIME FOR OVERTIME" per contract with any customer.

42: DOCUMENTS which evidence that DEFENDANT met the "reasonable relationship" test with regards to PLAINTIFFS and the PUTATIVE CLASS MEMBERS.

While acknowledging that Defendant is not required to produce documents relevant solely to class issues at this stage in the case, Plaintiffs argue that some of the documents Defendant has withheld are relevant to the merits of Plaintiffs' individual cases. Defendant contends that the requested documents are not relevant to Plaintiffs' individual cases and that Plaintiffs' ongoing push for these documents is therefore made in defiance of the Court's scheduling order.

## *II.*  *Legal Standards*

Rule 26(b) of the Federal Rules of Civil Procedure provides that, as a general rule "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" "Relevance" in the discovery context is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Pursuant to Rule 37(a), if a party refuses to make requested disclosures and efforts to resolve the discovery dispute fail, the opposing party may move for an order compelling discovery. The "party resisting discovery bears the burden of showing why" the information at issue should not be disclosed. *Brey Corp. v. LQ Mgmt., LLC*, Civ. No. AW-11-718, 2012 WL 3127023, at *4 (D. Md. July 26, 2012) (internal quotations and citations omitted). "District courts enjoy substantial discretion in managing discovery, including granting or denying motions to compel." *Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 531 (D. Md. 2011) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

3

### *III.  Analysis*

As noted, Plaintiffs' motion contests the sufficiency of Defendant's response to four of Plaintiffs' Requests for Production. The Court will address each Request in turn.

> #### *A. Request No. 1: All time sheets, pay stubs, W-2s, and/ or PAYROLL RECORDS for PLAINTIFFS and the PUTATIVE CLASS MEMBERS during the LIMITATIONS PERIOD.*

Regarding Request No. 1, Plaintiffs ask the Court to "compel Burns & McDonnell to supplement its production to Baxter's Request for Production No. 1 by providing anonymous payroll data for employees paid under the same pay plan as Plaintiffs." (Mot. Compel Mem. Supp. at 15.) Plaintiffs argue that such data is relevant to whether the individual Plaintiffs were compensated on a salary basis. The Court agrees in part and will order Defendant to produce anonymized payroll data for employees with the same job classifications as Plaintiffs.

As noted above, the central question of whether each Plaintiff qualifies as salaried (and therefore exempt) under 29 C.F.R. § 541.602 will depend in part on whether he was subject to "improper deductions" under 29 C.F.R. § 541.603. A finding that either Plaintiff was subject to improper deductions would indicate that he was not actually paid on a salary basis.

Under § 541.603, determining whether an employee was subject to improper deductions can involve more than simply observing if and under what circumstances that employee's pay was docked. The Department of Labor ("DOL") has explained that "[a]n exempt employee who has not suffered an actual deduction nonetheless may be harmed by an employer docking the pay of a similarly situated co-worker" because "exempt employees in the same job classification working for the same managers responsible for the actual improper deductions may reasonably believe that their salary will also be docked" and therefore alter their behavior. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01, 22180 (Apr. 23, 2004). Accordingly, § 541.603(b) specifies that "[i]f the

4

facts demonstrate that the employer has an actual practice of making improper deductions, [a salary basis dependent] exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." And § 541.603(a) includes among the factors courts should look to in determining whether an employee was subject to improper deductions: "the number and geographic location of employees whose salary was improperly reduced," and "the number and geographic location of managers responsible for taking the improper deductions."

Pursuant to this authority, evidence establishing whether employees with the same job classifications as Plaintiffs had their pay docked improperly is relevant to whether Plaintiffs were paid on a salary basis. While Defendant is correct that the Court may find evidence related to other employees' compensation unpersuasive if neither Plaintiff's compensation was ever improperly docked, such speculation does not render evidence regarding similarly situated employees irrelevant or disproportionate under Rule 26(b). (Opp'n Mot. Compel at 10–12.) However, the Court agrees with Defendant that evidence of Defendant's practices with employees in different roles than Plaintiffs is not relevant under the above regulations and guidance, and that production of payroll data for the full class of employees Plaintiffs seek to represent would be disproportionately burdensome at this stage. *See* § 541.603(b) ("Employees in different job classifications or who work for different managers do not lose their status as exempt employees" merely because an employer makes improper deductions from the salary of employees in a different job classification.). The Court will therefore order Defendant to produce anonymized payroll data for employees on the same pay plan as Plaintiffs who were likewise classified as associate startup coordinators or senior electrical engineers. (*See* Gertelos Depo. at 95:6–95:19, Mot. Compel Ex. 1, ECF No. 53-3) (discussing Plaintiffs' classifications).)

### B. *Request No. 8: All DOCUMENTS DEFENDANT reviewed in determining how to pay PLAINTIFFS and the PUTATIVE CLASS MEMBERS.*

Regarding Request No. 8, Plaintiffs complain that Defendant "refuses to provide *any* documents it reviewed to determine whether its 'straight time for overtime' compensation plan . . . met the 'salary basis' test," and ask the Court to compel Defendant to "supplement its production by providing the documents it reviewed to determine how to *pay* Plaintiffs." (Mot. Compel. Mem. Supp. at 16 (emphasis in original).) Defendant rejoins that "Defendant produced Plaintiffs' personnel files . . . time sheets, pay stubs, W-2s, and/or payroll records" and has therefore "produced all responsive documents." (Opp'n Mot. Compel at 20.)

As drafted, the Request is overbroad and seeks information that Defendant is not obligated to produce. However, Plaintiffs have clarified that the documents they seek to compel are Defendant's records outlining its policies for paying Plaintiffs and analyzing these policies. Such records are relevant to the question of whether Plaintiffs were paid on a salary basis. Of course, it goes without saying that Defendant need not produce legal analyses protected by the attorney-client privilege or the work product doctrine. Likewise, to the extent that Defendant has already produced the relevant records in response to other Requests, Defendant need not reproduce them. However, to the extent that there remain non-exempt policy documents regarding Plaintiffs' compensation that have not been produced, Defendant is ordered to produce them.

### C. *Request No. 26: ALL DOCUMENTS, if any, reflecting any PUTATIVE CLASS MEMBERS (including PLAINTIFFS) were compensated "STRAIGHT TIME FOR OVERTIME" per contract with any customer.*

Regarding Request No. 26, Plaintiffs asks the Court to compel Defendant to:

supplement its production by providing the contracts (and most importantly, the rate-sheets) it maintained with the clients to which it assigned Plaintiffs to work to determine whether Burns & McDonnell: (1) negotiated the purported minimum guaranteed salary it claims it paid Plaintiffs; (2) negotiated a minimum number of hours for Plaintiffs to work each week consistent with any alleged base "salary";

6

and (3) negotiated for Plaintiffs' work to be billed (and therefore paid) on an hourly basis.

(Mot. Compel Mem. Supp. at 17.) Plaintiffs argue that certain deposition testimony indicates that Defendant's contracts with its clients may have dictated not just the rates Defendant billed clients for Plaintiffs' work, but also the compensation Defendant could pay Plaintiffs, and that the contracts are therefore relevant to the FLSA analysis. Defendant responds that its client contracts merely dictate the rates at which Defendant bills a client, not the compensation Defendant pays its employees, and that such contracts are therefore irrelevant. (Opp'n Mot. Compel at 20–22.)

Confidential contracts that speak only to Defendant's billing practices, not its compensation practices, are not relevant to the FLSA analysis—which asks whether Defendant paid Plaintiffs on a salary basis, not whether Defendant billed clients by the hour for Plaintiffs' work. However, to the extent that Defendant's client contracts dictated (in Plaintiffs' words), "the purported minimum guaranteed salary it claims it paid Plaintiffs" or "a minimum number of hours for Plaintiffs to work each week consistent with any alleged base 'salary,'" such contracts could be relevant to determining whether Defendant paid Plaintiffs on a salary basis. Therefore, the Court will order Defendant to produce any client contracts that either set the minimum guaranteed salary Defendant paid Plaintiffs or the minimum number of hours Plaintiffs were required to work. If no such contracts exist, and the documents Plaintiffs seek speak only to billing and not compensation, Defendant will supply a sworn declaration affirming as much.

### D. Request No. 42: DOCUMENTS which evidence that DEFENDANT met the "reasonable relationship" test with regards to PLAINTIFFS and the PUTATIVE CLASS MEMBERS.

Regarding Request No. 42, Plaintiffs' motion will be denied. This discovery will be delayed until after the forthcoming summary judgment motion, should Plaintiffs' claims survive.

7

As noted above, a central inquiry in this dispute is whether the 29 C.F.R. § 541.604(b) reasonable relationship test applies to Plaintiffs, and if so, whether each Plaintiff's compensation met that test. The reasonable relationship inquiry "is an employee-specific analysis," which is determined in reference to the compensation and "'usual earnings' for each individual employee"—not in reference to a class of employees as a whole. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter Fair Labor Standards Act, 2018 WL 5921453 (Nov. 8, 2018). As such, the expansive discovery Plaintiffs seek related to prospective class members' compensation is not sufficiently relevant to the question of Defendant's liability for violations with regards to the individual Plaintiffs to justify the heavy burden of production.

Plaintiffs do make the compelling point that evidence of broad "reasonable relationship" problems could be highly relevant to determining the willfulness of the alleged FLSA violations as to the individual Plaintiffs, which determination will dictate the magnitude of the damages available to the individual Plaintiffs. (Mot. Compel Mem. Supp. at 18–19.) The Court agrees with this argument. However, in light of the expansive scope of the discovery sought, the Court deems it more consistent with the scheduling order and the considerations implicated therein to delay this discovery until after decision on Defendant's forthcoming summary judgment motion. If the Court finds as a matter of law that Defendant's treatment of Plaintiffs did not violate FLSA, then evidence that speaks only to damages will not be relevant, and this potentially burdensome discovery can be avoided. If, on the other hand, summary judgment is denied, then Plaintiffs will receive the information they seek in the second discovery period and will suffer no prejudice from the delay. As such, Plaintiffs' motion will be denied as to this Request.

## IV.   Conclusion

For the foregoing reasons, an order shall enter granting in part and denying in part Plaintiffs' motion to compel (ECF No. 53).

DATED this __3__ day of November, 2020.

BY THE COURT:

_James K. Bredar_
James K. Bredar
Chief Judge
